IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANNA VERONICA MACHARYAS )
                                     ) No. 18-186
    v.

NANCY A. BERRYHILL,
ACTING COMMISSIONER OF SOCIAL
SECURITY

**OPINION AND ORDER**

**SYNOPSIS**

Plaintiff filed an application for social security disability benefits pursuant to Title II and Title XVI of the Social Security Act. At issue here, primarily, is Plaintiff's claim of disability related to seizures. Her application was denied initially, and upon hearing by an administrative law judge ("ALJ"). The Appeals Council denied her request for review. Before the Court are the parties' Cross-Motions for Summary Judgment. For the following reasons, Plaintiff's Motion will be granted, and Defendant's denied.

**OPINION**

**I.    STANDARD OF REVIEW**

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g) 6 and 1383(c)(3) 7. Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based, and the court will review the record as a whole. See 5 U.S.C. §706. When reviewing a decision, the

district court's role is limited to determining whether the record contains substantial evidence to support an ALJ's findings of fact. Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)). Substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620, 86 S. Ct. 1018, 16 L. Ed. 2d 131 (1966). If the ALJ's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); Richardson, 402 U.S. at 390.

A district court cannot conduct a de novo review of the Commissioner's decision, or re-weigh the evidence of record; the court can only judge the propriety of the decision with reference to the grounds invoked by the Commissioner when the decision was rendered. Palmer v. Apfel, 995 F.Supp. 549, 552 (E.D. Pa. 1998); S.E.C. v. Chenery Corp., 332 U.S. 194, 196 - 97, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947). Otherwise stated, "I may not weigh the evidence or substitute my own conclusion for that of the ALJ. I must defer to the ALJ's evaluation of evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions. If the ALJ's findings of fact are supported by substantial evidence, I am bound by those findings, even if I would have decided the factual inquiry differently." Brunson v. Astrue, No. No. 10-6540, 2011 U.S. Dist. LEXIS 55457 (E.D. Pa. Apr. 14, 2011) (citations omitted). Nonetheless, I am not required to read the ALJ's opinion "in a vacuum." Knox v. Astrue, No. No. 9-1075, 2010 U.S. Dist. LEXIS 28978, at *22 (W.D. Pa. May 26, 2010).

## II. THE PARTIES' MOTIONS

Plaintiff's Motion centers on the ALJ's treatment of evidence related to Plaintiff's seizures, and alleged misstatements regarding the findings of Dr. Marrero, her treating neurologist. As Defendant points out, Plaintiff treated with Dr. Marrero monthly from August 2014 to October 2016 for, inter alia, simple partial seizures.[1]

The ALJ discussed Dr. Marrero's records at two points in his decision. The first of these appears in connection with a discussion of Listing 11.02, which addresses epilepsy. There, the ALJ determined that the Listing did not apply, because Plaintiff does not experience seizures more frequently than once or twice per month, or once a week:

> The undersigned recognizes the claimant alleges daily seizures; however, the medical record, including treatment records generated by her neurologist, Dr. Marrero, do not document frequent seizures. Rather, Dr. Marrero's treatment notes document benign neurological findings, including normal coordination, balance…and gait and negative nystagmus. Additionally, an EEG was abnormal only to the extent that it revealed non-specific changes, with the examiner noting such to 'possibly' represent decreased seizure threshold, and recommending clinical correlation (Exhibits 3F, pp. 8, 10, 12, 13, 16; 11F).

The ALJ referred to Dr. Marrero again in connection with the residual functional capacity ("RFC") analysis. He stated that the record revealed tests that do not support her symptoms, and that Dr. Marrero "has not completed paperwork revoking her driving license and has advised her to walk unassisted." In addition, the ALJ again noted that one EEG had been abnormal, but "only to the extent" noted in connection with his discussion of the Listings.

---

[1] Simple partial seizures occur when unusual electrical activity affects a small area of the brain, and does not affect awareness. https://www.cedars-sinai.edu/Patients/Health-Conditions/Simple-Partial-Seizures.aspx.

The documents referred to by the ALJ - Exhibits 3F, pp. 9, 10, 12, 13, 16, 11F, and 14F – do not appear to support his analysis, and some detail is in order.[2] In contrast to the single EEG referred to by the ALJ, and normal gait, the record – including the pages from Exhibit 3F to which the ALJ cites -- contains evidence of multiple abnormal EEGs and walking-related difficulties. On October 22, 2016, Dr. Marrero completed a Seizures Medical Source Statement ("Statement") in which he stated that the average frequency of Plaintiff's seizures is 1-3 times per week. In his Statement, Dr. Marerro identifies "Ambulatory EEG Sept. 21-23" as a positive test result. In Dr. Marrero's records, he describes that EEG as "abnormal due to the presence of etiological nonspecific changes, which could represent underlying left temporal lesion with irritative features and decreased seizure threshold." A report dated August 13, 2014 notes an "abnormal video intensive EEG, recommending ambulatory EEG." Dr. Marrero's October 10, 2014 office notes refer to a variety of findings that might appear other than benign or normal, such as myoclonic jerk of the extremities with fine tremor, and increased swaying on the Romberg test.

Another report by Dr. Marrero, dated October 18, 2016, noted an EEG "which revealed spike on the left temporal region." An MRI performed on November 29, 2016, notes the possibility of chronic microvascular ischemic changes; Dr. Marrero's November 7, 2014 notes refer to a prior MRI that showed small vessel ischemic changes to the brain. Exhibit 14F again contains multiple references to abnormal EEGs and various potentially pertinent observations, including fine tremors in Plaintiff's hands. While the ALJ refers to no nystagmus findings, there are findings of nystagmus in Dr. Marrero's records, such as in his report dated November 21, 2014. At worst, the record differs from the ALJ's characterization, and at best, the ALJ's review

---

[2] Exhibit 11F refers to a trigger point injection procedure to assist with pain and increase overall level of function. It is unclear how this evidence relates to the proposition for which it is cited.

appears incomplete or selective. It may well be that the record does not support a finding that Plaintiff meets or exceeds Listing 11.02, or that she is disabled, but is unclear whether the ALJ fully considered Dr. Marrero's records, and if he did not, what impact that would have on his analysis.

Further, an ALJ may not make speculative inferences from medical reports, or reject a physician's opinion due to his own credibility judgments, lay opinion, or speculation. Trotta v. Berryhill, No. 17-01556, 2018 U.S. Dist. LEXIS 215520, at *28 (E.D. Pa. Dec. 21, 2018). Here, it is unclear why the ALJ knew or determined that test results showing non-specific brain changes, spikes, or observations such as Plaintiff's tremors or swaying on Romberg test, fail to correlate with or support the existence of frequent seizures. Likewise, even assuming that the ALJ correctly characterized Dr. Marrero's records as reflecting "benign neurological findings," it is unclear how such findings are inconsistent with 1-3 seizures per week. One is left with the impression that the ALJ interpreted a physician's finding of an abnormal EEG, for example, and determined that the EEG was abnormal in a way that could not relate to frequent seizures. "There is a critical difference between an ALJ who resolves a conflict in medical opinions and an ALJ who rejects all of the medical opinions in favor of lay interpretation." Burns v. Colvin, 156 F. Supp. 3d 579, 589 (M.D. Pa. 2015). Given the record, it is uncertain in this case whether the ALJ engaged in the latter.

As a final note, Defendant's brief proffers several possible avenues to supporting the ALJ's conclusion regarding Listing 11.02. For example, Defendant contends, Dr. Marrero did not observe Plaintiff have a seizure, and Plaintiff did not have the dyscognitive seizures required by the Listing. The ALJ, however, focused on the frequency of Plaintiff's seizures, and not on these other factors. The ALJ, however, did not address these justifications, and nor will I.

Further, Defendant posits that it was reasonable for the ALJ to accurately describe the EEG results. This is so, but the ALJ indicated that the EEG results did not support Plaintiff's or Dr. Marrero's descriptions of seizure frequency. Drawing a conclusion from the EEG results differs from merely stating those results.

Remand is warranted, to afford the ALJ the opportunity to reassess the entirety of Dr. Marrero's records.  The ALJ should revisit the Listings accordingly, and should also revisit the RFC, credibility assessments, or any aspect of his decision that might be impacted by a reassessment of the evidence regarding Plaintiff's seizures.  Given that Plaintiff's remaining arguments stem from or are intertwined with the ALJ's treatment of medical evidence regarding her seizures, I need not separately address them.

## CONCLUSION

In conclusion, the ALJ's decision is not supported by substantial evidence, and remand is warranted as set forth supra.  Plaintiff's Motion will be granted and Defendant's denied.  An appropriate Order follows.

BY THE COURT:

_Donetta F. Ambrose_

Donetta W. Ambrose

Senior Judge, U.S. District Court

Dated: February 21, 2019

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANNA VERONICA MACHARYAS )
                                          ) No. 18-186
    v.

NANCY A. BERRYHILL,
ACTING COMMISSIONER OF SOCIAL
SECURITY

## ORDER

AND NOW, this 21st day of February, 2019, it is hereby ORDERED, ADJUDGED, and DECREED that Plaintiff's Motion is GRANTED and Defendant's DENIED, and this matter is remanded for further proceedings consistent with the foregoing Opinion.

                                                   BY THE COURT:

                                                   /s/ Donetta W. Ambrose
                                                   _____

                                                   Donetta W. Ambrose

                                                   Senior Judge, U.S. District Court